UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60422-CIV-SINGHAL
(CASE NO. 22-60063-CR-SINGHAL)

DESHAWN LEMONTE WHEELER,

     Movant,

v.

UNITED STATES OF AMERICA.,

     Respondent.

_____/

## ORDER

     Movant Deshawn Lemonte Wheeler ("Wheeler" or "Movant") filed a *pro se* Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence following a guilty plea in *United States v. Wheeler*, No. 22-CR-60063-SINGHAL-1 (S.D. Fla. 2022).[1]   (DE [39]). He claims he received ineffective assistance of counsel because, first, his lawyer failed to file a Notice of Appeal on his behalf and, second, his lawyer failed to object to the base level offense in his Presentence Investigation Report. The government filed a response to the Motion. (DE [7]).

     The Court referred the motion to the Magistrate Judge for an evidentiary hearing and Report and Recommendation.  Magistrate Judge Valle determined that the referral only required her to consider the failure to appeal claim.  She appointed the Federal Public Defender to represent Movant at the evidentiary hearing.  After considering the evidence,

---

[1] The Court cites to docket entries from the civil case as "(CV DE _)" and from the criminal case as "(CR DE _)."

the Magistrate Judge issued a Report and Recommendation recommending that Claim I

be denied and that a certificate of appealability not issue.

Movant, through the assistance of his federal public defender, filed his Objections

to the Report and Recommendation ("Objections" or "Obj.")  (DE [40]).  Movant's

appointed lawyer also filed a Supplement to the Motion to Vacate (DE [38]) in which she

addressed the base offense level issue. The Government filed a Response to Wheeler's

Objections.  (DE [42]).

The Court has conducted a *de novo* review of the matter and, for the reasons

discussed below, concludes that the Motion should be granted and Petitioner should be

resentenced.

I.       BACKGROUND

A.   The Offense

Petitioner's Factual Proffer Statement[2] establish the following facts. (CR DE [22]).  A

confidential informant purchased controlled substances from Wheeler several times

between November 2021 and February 2022.  *Id.* ¶ 1.  In March 2022, law enforcement

executed a search warrant at Wheeler's Lauderhill home while he and his minor daughter

were present.  *Id.*  Law enforcement officers discovered multiple firearms, ammunition,

Wheeler's driver's license, matching the address of the house being searched, legal

documents in Wheeler's name, including information pertaining to his 2014 federal

criminal case, and mail addressed to Wheeler.  *Id.*  Law enforcement found personal

identification documents for some 24 out-of-state victims, including 15 drivers' licenses,

---

[2] The Court takes judicial notice of the record from the criminal case pursuant to Federal Rule of Evidence 201 and *Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (citation omitted).

and over 30 debit cards, 10 firearms—manufactured outside of Florida—multiple drum magazines, and more ammunition. *Id.* ¶ 3, 4.

On March 31, 2022, a grand jury in the Southern District of Florida returned an Indictment charging Wheeler with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 2); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 3–5). (Indictment (CR DE [10] at 1–4).

### B. The Procedural Posture

On May 28, 2022, Movant signed a plea agreement that his privately retained attorney, John A. Weekes, Jr. ("Weekes"), negotiated with the Government.  He agreed to plead guilty to Counts 1–3 in exchange for dismissal of Counts 4 and 5.  *See generally* (CR DE [20]-[22]).  The Plea Agreement noted that the Court need not accept the Government's sentencing recommendation. *See* (CR DE [21] ¶ 8).  The Plea Agreement made no mention of a waiver.

Before sentencing, the Probation Office prepared a Pre-Sentence Investigation Report ("PSI").  The PSI reflected a base offense level of 22 under United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(3)(A)(i), (B).  (DE [30], ¶ 21). The base level included an enhancement for a prior conviction for battery on a law enforcement officer ("BOLEO").

The base level was increased to 32 because of the number of firearms involved (+4), the fact that two of the firearms were marked stolen (+2), the use or possession of a firearm or ammunition in connection with another felony offense (+4). *Id.* ¶ 22-24.

Wheeler's acceptance of responsibility resulted in a 3 offense level decrease. *Id.* ¶ 30. In sum, the total offense level was calculated at 29. *Id.* ¶ 32.

According to the PSI, Wheeler scored 11 criminal history points and a criminal history category of V under the U.S.S.G. *Id.* ¶ 56. The resulting advisory guideline term of imprisonment was set between 140- and 175-months' imprisonment. *Id.* ¶ 97. As to Count 3, 18 U.S.C. § 1028A(a)(1), (b)(2) required imposition of a mandatory consecutive sentence of 2 years' imprisonment. *Id.*

Wheeler filed objections to the PSI, challenging the 4-level enhancement for being in possession of a firearm in connection with another felony offense under § 2K2.1(b)(6)(A) and the 4-level enhancement for being in possession of 8 to 24 firearms under § 2K2.1(b)(1)(B). *See* (CR DE [33] at 3) (noting, among other objections, that the Government failed to supply a requisite showing of reliable evidence to establish Wheeler's firearms possessions advanced the other offenses charged). He did not challenge the BOLEO enhancement of his base level.

Wheeler appeared with his lawyer for sentencing on September 22, 2022. (Sentencing Tr. CR (DE [42]). During the sentencing hearing, his lawyer argued in favor of a downward departure to 70 months. *Id.* at 12 (arguing for 70 months since "[h]e already got the 24 months at the top.").[3] After consideration, the Court granted a downward variance and sentenced Wheeler to 96 months' imprisonment on Counts 1 and 2, concurrent, followed by 3 years of supervised release, and 24 months of incarceration on Count 3, to run consecutively to the sentence imposed on Counts 1 and 2. (Sentencing Minutes (CR DE [35] at 1). Taken together, Wheeler received a total sentence of 120

---

[3] In essence the argument was for a total sentence of 96 months.

months in prison.  *Id.*  The Court advised Wheeler of his right to appeal his sentence to the United States Court of Appeals for the Eleventh Circuit.  (Sentencing Tr. (CR DE [42] at 32–33).  He did not file an appeal.

### C.  The Instant Motion

Petitioner timely filed the instant § 2255 Motion on March 3, 2023.  (CV Mot. (DE [1]).  He raises two grounds for post-conviction relief.  Ground One alleges ineffective assistance of counsel, because Weekes failed to file a notice of appeal, despite Wheeler's insistence on this issue.  *Id.* at 4; (CV DE [1-1] at 5–7).  Wheeler also complains that the Court based its sentencing on Wheeler's "incorrect history and incorrect base offense level" along with counsel's failure to object to the Court.  Wheeler surmises that had Weekes performed effectively and properly objected to the [Presentence Investigation Report], his base offense level would have been lower and, consequently, the sentence ultimately imposed would have been less. *See* (CV DE [1-1] at 14).  He requests that the Court vacate his sentence and resentence him "correctly to the proper 80 months…."

### D.  The Report and Recommendation

In her Report and Recommendation, the Magistrate Judge concluded that Wheeler's testimony that he expressly asked counsel to file a notice of appeal was not credible.  (DE [39]) p. 25.  The Magistrate Judge based her credibility determination on several factors.

Wheeler had written a pre-sentence letter to the Court where he described his difficult upbringing and, following the births of his son and daughter, the beautiful family that cares about him. (DE [26]). Wheeler had testified that he wrote his pre-sentence letter to the Court because he was dissatisfied with his attorney, but the Magistrate Judge did

not credit that testimony because the letter does not mention anything about the attorney's performance. *Id.* Likewise, Wheeler testified that he was dissatisfied with his lawyer because the lawyer refused to call his daughter to testify at the sentencing, but the Magistrate Judge found that testimony unbelievable because Wheeler's mother testified that the girl wanted to testify but was too nervous. The Magistrate Judge also cited inconsistent testimony about when Wheeler asked his lawyer to file an appeal: in his May 5, 2023, affidavit Movant stated that he asked for an appeal at the end of the sentencing hearing, but at the evidentiary hearing Movant stated that he did not specifically request an appeal "until days after the sentencing hearing." *Id.* p. 26.

The Magistrate Judge also discounted two letters Wheeler claimed he sent to his lawyer within days of the sentencing asking for an appeal to be filed. She found his testimony that the letters were "recreations" of original letters mailed to counsel to be not credible. (DE [39] p. 26). On questioning from the Court, Wheeler conceded that the letters could not have been written on the dates they bear because the events recounted in the letters had not yet occurred. (DE [31] pp. 80-85). For example, in one letter dated September 21, 2022, he stated that his criminal history points were wrong because battery on a law enforcement is not a crime of violence (DE [8-1]), but Wheeler admitted he did not learn that battery on a law enforcement may not be a crime of violence until he met with his assistant federal public defenders on another case in October 2022. (DE [31] p. 84). The Magistrate Judge also noted that the letters did not bear "Legal Mail" stamps from the prison and that no envelopes were submitted. (DE [39] p. 26).

By contrast, the Magistrate Judge found Weekes fully credible. *Id.* ¶ 2. The Magistrate Judge credited Weekes' account that no direct request to appeal was made

and found it rational that a defendant who received a significant downward variance would not risk appealing.  *Id.* ¶ 2(a)–(b) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). The Magistrate Judge stated that "[a] rational defendant would not want to appeal this below-guidelines sentence.  Thus, it is reasonable to conclude that Movant did not reasonably demonstrate an interest in appealing."  (R. & R. (DE [39] at 28). Ultimately, the Magistrate Judge concluded that Wheeler did not expressly ask Weekes to file a notice of appeal and did not make any statements that would have triggered Weekes' duty to consult with him regarding the filing of a direct appeal.  The Magistrate Judge recommended denying the Motion to Vacate and not issuing a certificate of appealability. *Id.*

II.   STANDARD OF REVIEW

A.  Review of a Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's findings, the district court must "make a *de novo* determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id*.  The district court must consider the record and factual issues independent of the magistrate judge's report, as *de novo* review is essential to the constitutionality of § 636.  *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).  A district judge may not reject a magistrate judge's credibility determinations without hearing disputed testimony.  *See United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001).  "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible *only* when there is an 'articulable basis for rejecting the magistrate[] [judge's] original resolution

of credibility.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007) (quoting *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)).

B.  Ineffective Assistance of Counsel

The United States Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984) articulated a two-prong test for a court to decide whether a defendant's counsel representation was reduced to ineffective assistance.  466 U.S. at 688.  "The defendant must show (1) that counsel's performance failed to meet 'an objective standard of reasonableness….'" *Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2005) (quoting *Strickland,* 466 U.S. at 668).  Secondly, it must be established that "the defendant's rights were prejudiced as a result of the attorney's substandard performance". *Gomez-Diaz*, 433 F.3d at 791 (quoting *Strickland,* 466 U.S. at 693).  The *Strickland* standard applies to allegations that a defendant's attorney failed to file an appeal on behalf of the client.   *See Flores-Ortega,* 528 U.S. at 484.

III.   DISCUSSION

It is a "well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz,* 422 F.3d at 791-92. "[E]ven if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes." *Id.* at 792. If the attorney did consult, he acts unreasonably only by ignoring the client's desire to appeal. *Id.* But if the attorney did not consult, the court must examine whether there arose an "affirmative duty to consult." *Id.* This affirmative duty arises if "(1) any rational defendant would want to appeal, or (2) his

particular client reasonably demonstrated an interest in appealing." *Id.* (citing *Flores-Ortega,* 528 U.S. at 484).

A.  <u>Request to Appeal</u>

The Magistrate Judge, after hearing testimony and cross-examination, and reviewing the exhibits, concluded that Wheeler failed to present credible evidence that he expressly asked counsel to file a notice of appeal. (DE [39] p. 25). Wheeler objects to this finding. Wheeler takes issue with the Magistrate Judge's findings about his pre-sentence letter to the Court, his daughter's failure to testify at sentencing, and the September 2022 letters to counsel. In addition, Wheeler points out that he and Weekes agreed that they spoke about an appeal twice in the 14 days after sentencing.

With one exception, Wheeler's objections are simply arguments that the Magistrate Judge should have seen the evidence in a different light.  But Wheeler correctly challenges the Magistrate Judge's conclusion that the September 2022 letters to counsel were not believable because they lacked envelopes or prison stamps. Clearly, Wheeler would not have had stamped envelopes for letters he mailed to Weekes. This is an erroneous finding by the Magistrate Judge. But this error does not require a finding that Wheeler expressly requested an appeal; the letters include information that Wheeler could not have had when he purportedly wrote them and the Magistrate Judge's conclusion that the letters were not credible is supported by the record.

Wheeler also takes issue with the Magistrate Judge's unqualified acceptance of Weekes' credibility. Wheeler claims that Weekes' testimony was unreliable because he testified without contemporaneous notes two years after the sentencing. He argues that his testimony was no less consistent or credible than Weekes'. But the alleged

inconsistencies in Weekes' testimony are not inconsistent at all. Weekes testified that he thought Wheeler was happy with the sentence but admitted that Wheeler never actually said he was happy. That is not an inconsistency. Weekes admitted that Wheeler was unhappy "about aspects of the sentencing hearing" but that does not contradict Weekes' testimony that he thought Wheeler was happy with the sentence.

In sum, there is no basis in the record for the Court to overrule the Magistrate Judge's conclusion that Wheeler did not present credible evidence that he expressly asked Weekes to file a Notice of Appeal. But that does not end the inquiry.

B.    Duty to Consult

"[W]here a defendant has not specifically instructed his attorney to file an appeal, [the court] must still determine "whether counsel in fact consulted with the defendant about an appeal.'" *Thompson v. United States,* 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting *Flores-Ortega,* 528 U.S. at 478). "[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." *Id.* (citing *Frazer v. South Carolina,* 430 F.3d 696, 711 (4th Cir. 2005)).

The record shows that there was at least inquiry by Wheeler concerning an appeal. At sentencing, Wheeler asked for 70 months, and the Court gave him 96.[4] (DE [31] p. 128).[5] As the Marshals were taking him out, Wheeler asked Weekes if he thought he should appeal. *Id.* At the evidentiary hearing, Wheeler testified "yeah" when asked about

_____

[4] This ask was as to counts 1 & 2 concurrently, with count 3 requiring a consecutive 24 months.
[5] It goes without saying that the outcome of the case reflects very well on Weekes' performance, from negotiating the plea agreement to obtaining a below-guidelines sentence.

"ask[ing] [Weekes]" *generally* about an appeal." (Evidentiary Hr'g Tr. (CV DE [31] at 56) (emphasis added).  During Weekes' direct examination, the Government asked him if he had inquired if Wheeler wanted to appeal.  *Id.* at 119.  He answered:

> [I]t wasn't really like that.  He turned to me and goes, *do you think I should file an appeal?* At that point in time I said, why would you file an appeal?  You just got a huge downward variance.  And he goes, okay.  And I go, listen, take some time, whatever you want to do, give me a call, but you just [got] a downward variance, talk to your family about it and then let me know.  That's where it ended at the table.

*Id.* at 31 (emphasis added).  This brief dialogue is enough to satisfy the inquiry test under governing precedent.  In *Thompson*, the Eleventh Circuit held that a defendant who voiced dissatisfaction with his sentence relative to his co-defendants and inquired—just once, for five minutes, at the sentencing hearing—about his right to appeal, had reasonably demonstrated an interest in appealing.  504 F.3d at 1206–07.

In *Palacios v. United States*, the Eleventh Circuit concluded that after the district court imposed its sentence and the defendant asked "What's next? What can we do now," and appeared "quiet" and "crushed" when his counsel told him that nothing could be done, had "reasonably demonstrated an interest in appealing" that triggered the duty to consult. 453 Fed. Appx. 887, 889 (11th Cir. 2011); *see also Pako v. United States*, 2024 WL 5683528, at *5 (S.D. Fla. Apr. 23, 2024) (finding that the movant inquired about an appeal when "he asked counsel about appealing." (quotation marks and citation omitted)).  The finding within the Report and Recommendation "that Movant . . . did not make *any* statements that would have triggered attorney Weekes's duty to consult with Movant regarding the filing of a direct appeal" is inconsistent with the case law.  *See* (R. & R. CV [39] at 28); *Denny's, Inc.*, 500 F.3d at 1250. Therefore, there was an inquiry, and Weekes had a duty to consult.

The Eleventh Circuit has explained that "adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." *Thompson*, 504 F.3d at 1206.

Weekes and Wheeler had a few phone calls in the weeks after the sentencing. Weekes testified generally, "We were just discussing it, what could happen, what are the outcomes, what are the positive things and the negative things."  (DE [31] at 141). In a phone call a few days after the sentencing, Weekes reiterated that there was nothing to appeal, and if he were to appeal, the government could also appeal "and then he could get a higher sentence from Judge Singhal" *Id.* p. 120. Nonetheless, Wheeler still wanted to appeal because he "felt like the guideline was too high still."  *Id.* at 58.  Responding to the court's inquiry, Wheeler left the call believing that Weekes was filing an appeal.  *Id.* at 60.

Weekes recalls speaking to Wheeler "probably one time after" a week after the initial inquiry.  *Id.* at 120.  He testified:

> We then went into further detail about -- in reference to what Judge Singhal could do and give him a higher sentence.  He said, okay.  And I said, listen, you got a huge downward variance.  I said, like that downward variance . . . he was upset at the time that I remember when we were speaking, because he really wanted his daughter to speak.  However, during the sentencing hearing, his daughter -- Judge Singhal was very, very upset with him for having his daughter, who was like five at the time, around the drugs and around the guns.  So I didn't think it was a very good idea to have her speak. And I think I asked the Court to just read the letter, which is in page 14 which you just showed me, at the top of that page, and asked the judge to consider her letter instead.

*Id.* at 121.

Without a doubt, Wheeler and Weekes discussed an appeal at least twice within the 14-day period after the Court's sentencing.  *See* Obj. (CV DE [40] at 7 (citing Evidentiary Hr'g Tr. (CV DE [31] at 52, 56–60, 76–78 (Wheeler); *id.* at 119–120, 127–130, 139, 146 (Weekes)).  Ultimately, Attorney Weekes's final advice was as follows:

> [I]f you open the door to this, then you're coming back, the government's going to withdraw the plea deal that they gave you, and you're looking at 165 months, I think is what it was.  I would have to look back at this, and Judge Singhal can give you more.  And I said, you haven't even done your VOP yet, so you don't even know what you're going to get in that sense.  So that was that, and he said, "Okay, well, I'll let you know." And that's where it was.

*Id.* at 127–28.

Based on a review of the transcript, the Court concludes that Wheeler's attorney inadequately consulted with him on whether to take an appeal. There were arguable reasons to appeal, if Wheeler wanted, even if an appeal would not have been successful. Despite the downward departure, the sentence given was higher than the sentence asked for. Wheeler had filed objections to the PSI.  *See generally* (CR DE [33])[6] (submitting that an enhancement under 2K2.1(b)(6)(A) is unwarranted.); *see also* Government Obj to Wheeler's PSI Report Objections (CR DE [34]).  There was also the unpreserved error of probation's (admittedly) erroneous reliance on BOLEO to establish an enhanced base offense level. The door was still open to lodge an appeal because of the preserved objection. Weekes' summary advice that there "was nothing to appeal" after obtaining a

---

[6] More expansive arguments are found within the Supplemental Briefing to the § 2255 Motion.  *See* (CV DE [38]).  Of note, the Briefing contends that "if [Attorney Weekes] had challenged probation's reliance on Mr. Wheeler's prior BOLEO [Battery on a Law Enforcement Officer] offense to establish an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3), the district court would have concluded that Mr. Wheeler's prior BOLEO conviction was not a "crime of violence," and thus that Mr. Wheeler's base offense level was 20— not 22." (CR DE [38] at 6) (citing *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010); U.S.S.G. §§ 2K2.1(a)(3), (a)(4); *Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1385 (11th Cir. 2018)).

downward departure was a nod to reality but not a fair analysis to the client of whether to appeal.

Further, the advice from Weekes that the court could impose a higher sentence at re-sentencing was incorrect. Without a successful cross-appeal from the Government or new, aggravating facts, as Wheeler highlights, the sentence imposed at resentencing must not exceed the previously imposed sentence. *See Danforth v. Minnesota*, 552 U.S. 264, 283 n.18 (2008) (reiterating that there must be apparent reasons for a more severe sentencing (citation omitted)); *United States v. Ramos*, 130 Fed. Appx. 415, 421 n.7 (11th Cir. 2005) (citations omitted); *see also United States v. Fowler*, 749 F.3d 1010, 1018–19 (11th Cir. 2014) (although "there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial" or upon resentencing, due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives").

In addition, the Magistrate Judge did not account for Weekes's inaccurate advice that the government would, or could, withdraw Wheeler's plea agreement and prosecute his family members. *See* Evidentiary Hr'g Tr. (CV DE [31] at 120, 129–133, 139). Weekes provided inaccurate advice here, as the Plea Agreement made no mention of a waiver. The same analysis applies to Attorney Weekes's consultation that the Government would possibly pursue charges against his daughter's mother. *See id.* at 139.

The idea that there was nothing left to appeal, combined with advising Wheeler that the court could impose a longer sentence after appeal, does not satisfy the attorney's duty to consult. *See* (Evidentiary Hr'g Tr. (CV DE [31] at 119); *Thompson*, 504 F.3d at

1207 ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense."); *Stanton*, 397 Fed. Appx. at 550 ("Counsel's statement that there were no appealable issues without further explanation did not constitute adequate consultation."). To the extent the Report and Recommendation holds otherwise, it is overruled.

### C.  Failure to Object to the Base Level Offense

In his second claim, Wheeler argues that Weekes' representation was inadequate because he failed to object to the fact that his base level offense was set at 22 because of an erroneous reliance on Wheeler's BOLEO conviction. All parties seem to agree that in Florida a BOLEO offense is not a crime of violence that would warrant application of 2k2.1(a)(3)(A)(i), (B). Indeed, Weekes testified that "he missed" the issue.

The failure to object to a guideline error "falls below an objective standard of reasonableness" where the law was clear at the time of sentencing and there was no strategic basis for counsel's failure to object. *Griffith v. United States,* 871 F.3d 1321, 1329-31 (11th Cir. 2017). The Magistrate Judge did not address this issue in her Report and Recommendation.   But this Court has reviewed the parties' arguments and the relevant case law and concludes that Wheeler has alleged facts that show his counsel's performance was deficient in not objecting to the BOLEO enhancement.

### D.  Prejudice

"Of course, *Strickland* requires more than just a deficient performance on the part of a defendant's attorney." *Id.* at 1336. It must be established that "the defendant's rights were prejudiced as a result of the attorney's substandard performance". *Gomez-Diaz*, 433 F.3d at 791 (quoting *Strickland,* 466 U.S. at 693).

15

Wheeler fails to show prejudice on the base offense level issue. He argues that if his base offense level were 27 instead of 29, the lower end of the sentencing guideline would have been 120 months instead of 140 months. This is still higher than the 96-month term given by the Court. Petitioner's assumption that he would have received the same 44-month downward departure off a lower base offense level is not only mere conjecture, but also it is refuted by the record.  Here, at sentencing, the Court stated, "So his bottom is 164 months, 140 plus 24. I mean, Mr. Weekes, I'm willing to go below that 164, which would be granting you a downward variance, but, you know, part of the issue is sometimes *we also look at previous sentences and start with that as our bottom*, you know, and [your client] got the 96 months from Judge Moreno, was released, and in less than a year has this case." (CR DE [42] p. 30) (emphasis added). The reality is that the 96-month sentence was, in the Court's consideration, the appropriate **bottom** sentence, prior to the consecutive 24 months, for this Defendant who was convicted of those certain crimes. Starting from a lower base offense level would not have made any difference in the sentence given.

The prejudice analysis is, however, different on the failure to consult issue. To establish prejudice on that issue, Wheeler "must show that 'there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" *See Thompson*, 504 F.3d at 1207–08 (citing *Flores–Ortega,* 528 U.S. at 484).  Since "a direct appeal of a federal conviction is a matter of right…. we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an

16

appeal." *Thompson*, 504 F.3d at 1207–08 (citing *Rodriquez v. United States,* 395 U.S. 327, 329–30 (1969)).

Importantly, "[s]o long as a defendant can show that counsel's constitutionally deficient performance deprived him of an appeal that he otherwise would have taken, courts are to presume prejudice with no further showing from the defendant of the merits of his underlying claims." *Garza v. Idaho*, 586 U.S. 232, 242 (2019) (citation modified).

After careful review of all the facts and the records of the civil and criminal docket, and the case law cited herein, the Court finds that Wheeler was prejudiced in failing to appeal his sentence. This finding, of course, overrules the Report and Recommendation's ultimate conclusions.  Wheeler demonstrated a reasonable probability that he would have lodged an appeal following an adequate consultation.  *See Garza*, 586 U.S. at 235 (reciting the holding in *Flores-Ortega* that "prejudice to the defendant should be presumed 'with no further showing from the defendant of the merits of his underlying claims.'") (citing *Flores-Ortega*, 528 U.S. at 484).  Accordingly, the Court finds that Wheeler has demonstrated prejudice as to the failure to adequately consult.

IV.   REMEDY

The Eleventh Circuit has set forth the procedure for when "an out-of-time appeal in a criminal case is warranted as the remedy in a § 2255 proceeding:"

> (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated;
> (2) the same sentence should then be reimposed;
> (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and
> (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is [fourteen] days, which is dictated by Rule 4(b)(1)(A)(i).

*United States v. Davis*, 2024 WL 4765852, at *3 (11th Cir. Nov. 13, 2024) (quoting *United States v. Phillips*, 225 F.3d 1198, 1201 (11th Cir. 2000)).  The remedy in *Philips* "'is limited to permitting the defendant to file what would otherwise be an untimely appeal from the original sentence,' necessarily 'requir[ing] the district court to re-impose the same sentence as before, which can then be reviewed on appeal.'"  *Davis*, 2024 WL 4765852, at *3 (quoting *United States v. Doyle*, 857 F.3d 1115, 1118 n.2 (11th Cir. 2017)).  A *de novo* sentencing is not required and a new sentencing hearing is not required. *Davis,* 2024 WL 4765852, at *4.

V.      UNDERLINE_CONCLUSION[7]

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** as follows:

(1) The Report and Recommendation (DE [39]) is **OVERRULED IN PART.**

(2) The Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 (CV DE [1]) is **GRANTED.**

(3) The Court will enter an order in the related criminal case vacating the original judgment and imposing the identical sentence in a new judgment.

(4) Movant may file an appeal of the new judgment. With few exceptions, the notice of appeal must be filed within **fourteen (14) days** of the entry of the new judgment.

(5) The Clerk of Court is **DIRECTED** to attach to this order an Application to Proceed *in forma pauperis* on appeal.

---

[7]Wheeler must carefully read and understand this Conclusion portion of this Order and adhere to the time lines.  He was already advised of these rights at his original sentencing hearing which has now been vacated.  But the Court also knows Wheeler wasn't the most respectful or attentive defendant at sentencing, prompting the Court to ask "Is he listening?" (CR DE [42} p. 32).

(6) This Clerk of Court is **DIRECTED** to **CLOSE** this case and **DENY AS MOOT**

any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 25th day of

February 2026.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF
and by US Mail to:

**Deshawn Lemonte Wheeler**
06931-104
Edgefield
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 725
Edgefield, SC 29824